UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

GRACE MARY ALLESXANDRO,

    Plaintiff,

  v.                                                     Case No. 19-CV-1882

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

Grace Mary Allesxandro, who is representing herself, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

On December 6, 2016, Allesxandro filed an application for SSI alleging disability beginning on June 7, 2010 due to a left arm fracture, left arm nerve damage, migraines, arthritis in neck, bulging disc in neck, trichotillomania, depression, sleep apnea, and anxiety attacks. (Tr. 177.) Allesxandro's application was denied initially and upon reconsideration. (Tr. 12.) Allesxandro filed a request for a hearing and a hearing was held before an Administrative Law Judge ("ALJ") on September 6, 2018. (Tr. 27–62.) Allesxandro testified at the hearing, as did Joseph Entwisle, a vocational expert ("VE"). (*Id.*)

In a written decision issued February 4, 2019, the ALJ found that Allesxandro had the severe impairments of history of left arm fracture, obesity, depression, and anxiety. (Tr. 14.) The ALJ found that Allesxandro did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings"). (Tr. 15–16.) The ALJ further found that Allesxandro had the residual functional capacity ("RFC") to perform light work, with the following limitations: limited to frequent handling and fingering with the left upper extremity; cannot climb ladders, ropes, or scaffolds; must avoid exposure to unprotected heights, hazards, and moving machinery; limited to job that are unskilled, simple, and routine; and limited to jobs having only occasional decision making, changes in the work setting, and interaction with supervisors, co-workers, and the public. (Tr. 16.)

The ALJ found that Allesxandro had no past relevant work, but given her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (Tr. 20–21.) As such, the ALJ found that Allesxandro was not disabled from the date her application was filed until the date of the decision. (Tr. 21.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Allesxandro's request for review. (Tr. 1–6.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a

2

conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. Application to this Case

Allesxandro challenges the ALJ's decision solely based on new evidence regarding her mental limitations. (Pl.'s Br., Docket # 11.) However, this evidence cannot be the basis for reversing the ALJ's decision under sentence four. *See* 42 U.S.C. § 405(g). Further, Allesxandro has not requested a sentence-six remand, which allows a reviewing court to remand a case to the Commissioner for consideration of additional evidence upon a showing that there is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." § 405(g) (sixth sentence). Evidence is "new" if it did not exist or was unavailable to the claimant at the time of the hearing. *Schmidt v. Barnhart,* 395 F.3d 737, 742 (7th Cir. 2005). And it is "material" if it is reasonably probable

3

that the ALJ would have reached a different conclusion had the evidence been considered. *Id.* at 741–42. Thus, new evidence is only material if it is "relevant to the claimant's condition during the relevant time period encompassed by the disability application under review." *Id.* (citation omitted).

Here, Allesxandro seeks to introduce treatment notes from December 2019 to March 2020 from psychiatrist Dr. Ahmad Khan. (Pl.'s Br. at 1.) Allesxandro established care with Dr. Khan on December 12, 2019; he assessed diagnoses of moderate recurrent major depression and obsessive-compulsive disorder. (*Id.* at 7.) In subsequent monthly medication checks, Dr. Khan noted that Allesxandro's mood was dysthymic, anxious, unhappy, and dysphoric. (*Id.* at 1, 3, 5.) Further, Dr. Khan noted that Allesxandro's affect during visits was abnormal, constricted, and indifferent. (*Id.*) However, Allesxandro established care with Dr. Khan ten months after the ALJ rendered his decision. And, as the Commissioner points out, Dr. Khan's treatment notes do not indicate that they relate to Allesxandro's condition during the time period under consideration by the ALJ. (Def.'s Br. at 9, Docket # 15.)

Thus, it is not reasonably probable that the ALJ would have reached a different conclusion had Dr. Khan's treatment notes been considered. First, "medical evidence postdating the ALJ's decision, unless it speaks to the patient's condition at or before the time of the administrative hearing, could not have affected the ALJ's decision and therefore does not meet the materiality requirement." *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008). Dr. Khan does not opine that the treatment notes reflect the severity of Allesxandro's mental impairments when these impairments were assessed by the ALJ. Moreover, while the new treatment notes document deficits in Allesxandro's mood and affect, Dr. Khan did not evaluate Allesxandro's functional limitations or opine that she could not maintain full-time

4

employment due to her mental limitations. Therefore, Dr. Khan's treatment notes are not material evidence warranting a sentence-six remand.

Allesxandro also seeks to introduce the results of an attention deficit hyperactivity disorder (ADHD) test completed in January 2020 by Dr. Marilyn Befera-Zielinski. Dr. Khan referred Allesxandro to Dr. Befera-Zielinski, who wrote a letter on January 16, 2020 explaining the results of an Adult ADHD Checklist. (Pl.'s Br. at 10.) Dr. Befera-Zielinski noted that Allesxandro's profile was "suggestive of ADHD" and that she had "significant problems with attention span unless interested in something" and was "easily distracted." (*Id.*) Dr. Befera-Zielinski also stated that Allesxandro had poor listening skills, significant restlessness, and an internal sense of anxiety or nervousness. (*Id.*) However, as with Dr. Khan, there is nothing in Dr. Befera-Zielinski's letter to suggest that the opinion addresses Allesxandro's mental limitations at the time of the ALJ's decision, as opposed to a subsequent worsening of her mental limitations. As such, Dr. Befera-Zielinski's letter is not material evidence, and would not warrant a sentence-six remand.

As to the evidence that the ALJ did consider, Allesxandro does not assert any specific errors made by the ALJ. However, as Allesxandro is representing herself, I construe her brief as an argument that the ALJ's mental RFC was not supported by substantial evidence. RFC is the most the claimant can do in a work setting "despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000–01 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96–8p. Again, the ALJ assigned the following limitations in Allesxandro's RFC to address her mental impairments: jobs that are unskilled, simple, and routine and jobs having only occasional decision making, changes in the work setting, and interaction with supervisors, co-workers, and the public. (Tr. 16.) The Commissioner contends that the ALJ

5

did not err in formulating Allesxandro's mental RFC but instead properly considered the relevant objective medical and opinion evidence. (Def.'s Br. at 3–4.)

Allesxandro alleged disability stemming from the mental impairments of depression, anxiety, and trichotillomania.[1] In her Adult Function Report, Allesxandro stated that she had no problems getting along with family, friends, neighbors, or others. (Tr. 191.) Further, she reported problems completing tasks, but no difficulties with concentration, understanding, or following instructions. (Tr. 192.) Allesxandro noted that she could finish what she started and follow written instructions well. (*Id.*) However, she reported that she could handle stress "ok," was not good at handling changes in routine, and pulled her hair out when stressed. (Tr. 193–94.) During the hearing, Allesxandro explained that her trichotillomania has "a lot to do with nerves and anxiety and stress" and often, she does not know she is pulling her hair out and does not mean to do it. (Tr. 38.) Allesxandro testified that she pulls her hair so much that she gets bald spots and keeps it short in order to control her trichotillomania. (Tr. 38.) She stated that although she was prescribed Paxil, the medication did not help with her trichotillomania. (Tr. 42.)

The ALJ found that although Allesxandro's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and the other evidence in the record. (Tr. 17.) The ALJ began with the medical evidence. He noted that while Allesxandro's treatment notes showed a history of depression and anxiety, mental status examinations showed she was alert and oriented to

---

[1] Trichotillomania is a mental disorder that involves recurrent, irresistible urges to pull out hair from one's scalp, eyebrows, or other areas of the body, despite attempts to stop. *Trichotillomania (hair-pulling disorder)*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/trichotillomania/symptoms-causes/syc-20355188 (last visited December 7, 2020).

6

person, place, and time; her behavior, judgment, and thought content were normal; depression screens were negative on two occasions; and there was no evidence of ongoing treatment for depression and anxiety since her application date. (Tr. 18.)

The ALJ then considered the opinion evidence. In a Third-Party Function Report, Allesxandro's husband reported that she is under constant stress that makes her pull out her hair and is depressed. (Tr. 206.) He also stated that Allesxandro is able to pay attention as long as needed and follow written instructions. (Tr. 212.) The ALJ gave Allesxandro's husband's opinion limited weight, given his personal relationship with Allesxandro and the fact that treatment notes showed some deficits in Allesxandro's mood, but her memory, attention, and concentration were intact. (Tr. 18.)

Next, the ALJ considered a March 2017 consultative examination completed by Dr. Befera-Zielinski. As to psychiatric history, Dr. Befera-Zielinski noted that Allesxandro's current medications included Paxil and Lorazepam and that Allesxandro had seen counselors and psychiatrists since childhood but had not been followed by one for the past six years. (Tr. 770.) Dr. Befera-Zielinski noted that Allesxandro was alert, oriented, and cooperative with a sad mood and restricted affect, but did not appear particularly anxious. (Tr. 772.) Allesxandro reported some symptoms of depression, including avoiding going out and being around people. (*Id.*) She stated that she experienced panic attacks and pulls her hair out constantly, which creates bald sports and makes her self-conscious. (*Id.*) Further, she reported that she enjoys socializing with her family, children, and parents but has never been good with maintaining concentration, persistence, and pace. (Tr. 773.)

Dr. Befera-Zielinski noted that on formal mental status testing, all areas were within normal limits, with the exception of reductions in verbal abstraction ability. (Tr. 772.)

7

Case 2:19-cv-01882-NJ   Filed 12/22/20   Page 7 of 10   Document 17

Moreover, Dr. Befera-Zielinski reported that Allesxandro was a good remote historian; had very good recent memory and fund of knowledge; had concentration adequate for the evaluation as evidenced by her ability to perform serial sevens with ease; and could follow a three-step command. (Tr. 772–73.) Dr. Befera-Zielinski opined that Allesxandro would be able to understand, remember, and carry out simple instructions but would be expected to have moderate to severe limitations responding appropriately to supervisors and co-workers. (Tr. 775.) Dr. Befera-Zielinski also opined that Allesxandro would likely not have any problem maintaining concentration and attention for simple tasks but would have trouble multitasking. (*Id.*) Further, Dr. Befera-Zielinski noted that Allesxandro "traditionally has had profound limitations withstanding work stress and adapting to change." (*Id.*) The ALJ gave Dr. Befera-Zielinski's opinion great weight, reasoning that it was consistent with the results of the consultative examination. (Tr. 19.) The ALJ noted that Dr. Befera-Zielinski's finding as to Allesxandro's ability to understand, remember, and carry out simple instructions was supported by Allesxandro's intact memory, attention span, and concentration. (*Id.*) Additionally, the ALJ noted that "based on [Allesxandro's] statements regarding her social functioning," a finding that Allesxandro could perform work with no more than occasional interaction with supervisors, co-workers, and the public was appropriate. (*Id.*)

The ALJ then evaluated the opinions of the state agency consultants. At the initial level, Dr. Soumya Palreddy opined that Allesxandro was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of

rest periods. (Tr. 72.) Dr. Palreddy explained that Allesxandro could complete simple two-to-three-step tasks with adequate pace and persistence. (*Id.*) Dr. Palreddy also opined that Allesxandro had moderate limitations in social interaction, including the ability to interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, based on reports of difficulty interacting with others and the need to pull her hair when stressed. (*Id.*) Further, Dr. Paldreddy found that Allesxandro was moderately limited in her ability to respond appropriately to changes in the work setting and could perform work with no more than routine job stress and occasional process changes. (Tr. 73.) State agency consultant Dr. Karla Delcour concurred with Dr. Palreddy's limitations at the reconsideration level. (Tr. 85–87.)

The ALJ gave Drs. Palreddy and Delcour's opinions great weight with regard to Allesxandro's ability to complete simple two-to-three-step tasks, as they were supported by Allesxandro's ability to read and watch movies and help her children with homework, completion of a master's degree in 2016, and mental status examinations that showed good memory, attention span, and concentration. (Tr. 19.) However, the ALJ further limited Allesxandro to no more than occasional interaction with supervisors, co-workers, and the public "based on her subjective complaints of not wanting to go anywhere and feeling self-conscious around others." (*Id.*)

The record evidence fully supports the ALJ's RFC determination. As the ALJ noted, despite a history of depression and anxiety, the record contained little evidence of mental health treatment, mental status examinations were largely normal, and Allesxandro reported no difficulties with concentration, understanding, or following instructions. And although

9

Allesxandro reported difficulties related to her trichotillomania, such as handling stress, the ALJ accounted for Allesxandro's alleged symptoms in the RFC. Critically, Allesxandro does not explain how these limitations are inadequate. For these reasons, the ALJ did not err in his mental RFC assessment.

## CONCLUSION

The ALJ's mental RFC is supported by substantial evidence. Thus, the Commissioner's decision is affirmed and the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 22nd day of December, 2020.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge